# Third District Court of Appeal

## State of Florida

Opinion filed July 22, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-2039
Lower Tribunal No. 20-15919-FC-04
_____

**Vlaunir Jimenez Da Silva,**
Appellant/Cross-Appellee,

vs.

**Christine Marie Labriola,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Oscar Rodriguez-Fonts, Judge.

Law Office of David Scott, P.A., and David Scott (Weston), for appellant/cross-appellee.

Andrew M. Kassier, P.A., and Andrew M. Kassier, for appellee/cross-appellant.

Before SCALES, C.J., and FERNANDEZ and BOKOR, JJ.

FERNANDEZ, J.

Vlaunir Jimenez Da Silva ("the Husband") appeals the trial court's Amended Final Judgment, as well as the court's Order granting Christine Marie Labriola's ("the Wife") Motion for Rehearing. The Wife cross-appeals the same. On direct appeal, we reverse the Final Judgment and Order in part as to the Wife's entitlement to attorneys' fees and costs because the trial court made that determination without an evidentiary hearing. On cross-appeal, we affirm in all respects.

## FACTS AND PROCEDURAL BACKGROUND

The Wife was born on April 1, 1976. The parties married in 2012 and had no children. They separated in 2017, at which time the Husband moved out of the marital residence. Since then, the Husband has paid all expenses associated with the marital home and the Wife's living expenses. The Wife alleges that, in August 2020, the Husband terminated her access to a credit card he had been paying.

On October 13, 2020, the Husband filed a petition for dissolution of marriage. The Wife filed an answer and verified counterpetition seeking equitable distribution, alimony (including durational alimony), temporary support, and attorney's fees and costs.

In January 2021, the Wife moved for temporary attorney's fees, suit monies, and costs, alleging she had been unemployed since 2014 due to

2

health issues and that the Husband, as the primary wage earner, had the ability to pay. The trial court granted the Wife temporary fees and costs.

In March 2022, the Wife's counsel moved to withdraw, and new counsel filed a verified motion to continue trial and for other relief. The Wife refiled the motion twice more in 2022, citing financial needs to prepare for the final hearing.

Later in 2022, in support of a motion to compel the Wife's medical evaluation, the Husband filed a memorandum of fact and law. He attached social media photographs depicting the Wife on several vacations with family or friends and dining out, which the Husband contended undermined the Wife's contention that she was bedridden.

Earlier, in her May 2021 deposition, the Wife testified she holds a master's degree in comparative sociology (anthropology focus) from Florida International University ("FIU") and a bachelor's degree from FIU in philosophy with a minor in English. She speaks Portuguese, English, and Spanish. The Wife testified that her last full-time employment was in 2012 as a program evaluation researcher with Children's Services Council of Broward, earning $50,000 annually. She resigned after the employer changed its telecommuting policy, citing the forty-mile commute each way, and testified that she did not resign due to a medical condition. The Wife

testified that she was diagnosed with Hashimoto's thyroiditis in 2014 and later learned of the Husband's extramarital affair in late 2014, which she alleged contributed to ongoing trauma-related symptoms, including post-traumatic stress disorder ("PTSD"), anxiety, depression, chronic pain, chronic illnesses, mental illnesses, and migraines. She also testified that, after consulting with counsel, she did not apply for Social Security Disability Insurance (SSDI) or Supplemental Security Income (SSI) because she did not meet the financial requirements.

The Wife further testified she volunteered with Miami-Dade Parks and Recreation's Conservation Corps in 2017 performing physical labor and volunteered at Miami's Seafood and Wine Week in 2018 or 2019. She testified that she takes migraine medication before hair or medical appointments, takes walks, and practices gentle yoga, and that she attended yoga sessions outside the home before March 2020. She confirmed photographs showing her at an art gallery event in Miami. The Wife testified that she traveled to Los Angeles to visit family every two to three months before the pandemic, and that she traveled to Brazil in 2017 and 2019, stating she does so every two years to maintain her Brazilian residency.

At her second deposition in March 2022, the Wife testified that the parties were married in 2012, they lived together for five years, and the

4

Husband moved out in 2017. The Wife further testified that her chronic illnesses were a direct result of the "betrayal trauma" from the Husband's infidelity and that symptoms of her chronic illnesses made her disabled.

In July 2023, the Wife moved to continue the trial set for August 14, 2023, citing an amendment to section 61.08, Florida Statute (2023), Florida's alimony statue, that eliminated permanent periodic alimony and adultery as a relevant issue. She contended that these changes required additional discovery and an amended petition and that discovery and depositions remained incomplete. After the Wife twice supplemented her motions for continuance, the trial court denied the motions.

The final hearing took place over several days in August 2023. The Wife testified and presented four experts: 1) Dr. Teshamae Monteith, a licensed neurologist and headache specialist at the University of Miami School of Medicine; 2) Dr. Matthew Simon, a psychologist; 3) Iris More, a psychotherapist; and 4) Lynn Britt, a Certified Public Accountant (CPA). The Husband testified and presented three witnesses: 1) Joseph Castro, a forensic accountant; 2) Mario Garcia, a real estate appraiser; and 3) Tamar Thomas, a vocational rehabilitation specialist.

On the second day of trial, the Husband called the Wife as a witness, as well. The Wife testified that she worked early in the marriage as a program

5

evaluator for the Children's Services Council of Broward County and did ethnography consulting but became incapacitated by migraines in early 2014. The Wife testified her condition worsened over time, that she began antidepressant medication, and that by 2018-2019, she spent about 75% of her days in bed. She further testified she developed vestibular neuronitis in 2020 and later experienced "intractable" migraines. The Wife also testified that after discovering her Husband's infidelity in December 2014, she became severely traumatized. Since then, she has received mental health treatment. The Wife testified she has been treated by Dr. Monteith but continues to experience migraines of varying severity that affect her daily functioning, including travel.

The Wife testified that her migraines and her depression go together so that the migraines could make her depression worse, and her depression could make her migraines worse. The Husband's counsel asked the Wife why she could not maintain any form of employment; the Wife responded her current functioning was temporary and unsustainable because attending the court hearings that week required exceeding her weekly and monthly limits for acute migraine medications. She stated that after this week, she would have to avoid acute migraine medications for one to two months to prevent medication-overuse headaches. She testified that the stress of being present

6

in court was temporarily masking the pain via adrenaline and cortisol, but that once that wore off, she expected a "crash" after the exertion where she will experience severe migraines followed by days or weeks bedridden. The Wife was cross-examined extensively regarding the social media pictures she posted while on trips, visiting art galleries, or dining with friends. She further testified that her parents had loaned her $60,000-70,000 after the Husband moved out in 2017.

The Wife also testified that the Husband took excellent care of her during her illness and, at her request, delayed filing for divorce because it would be too traumatic, given her health. She also testified that her California family cannot visit her in Miami because it is too difficult for them to travel with children.

The Husband then called Tamara Thomas, a vocational rehabilitation counselor, who testified she assessed the Wife and opined the Wife is employable in South Florida. Thomas recommended that the Wife refresh her computer skills and join the American Grant Writers Association to pursue remote work. Thomas estimated the Wife could earn between $48,320-$59,860/year. Thomas conducted three job searches and identified ten available positions the Wife could apply for.

7

The Wife's attorney objected to Thomas's testimony and report because it was prepared before the changes in section 61.08, Florida Statute, eliminating permanent periodic alimony. The trial court overruled this objection. On cross-examination, Thomas acknowledged the Wife does not drive and suggested public transportation. Thomas conceded she did not contact any employer or confirm whether the positions identified in her July 3, 2023 search remained available. The Husband then rested his case.[1]

Thereafter, the Wife presented her case. She first called Dr. Monteith. The parties stipulated to Dr. Monteith testifying as an expert.

Dr. Monteith, the Wife's treating physician since October 2020, diagnosed the Wife with chronic, intractable migraines occurring about fifteen days per month and rated her at the most severe MIDAS ("Migraine Disability Assessment Scale") level – grade four. Dr. Monteith testified that intractable means "despite use of medications the migraines persist." She testified that the Wife also reported vertigo, sensitivity to light and sound, and nausea, and had been diagnosed at the University of Miami with vestibular neuritis, which could contribute to migraines. Although the Wife's headache

---

[1] The Husband also called Mario Garcia, a real estate appraiser, who testified that the value of the marital home where the parties lived was $165,000 in 2012; $260,000 in 2017 when the parties separated; and $305,000 in October 2020 when the Husband filed the petition for dissolution of marriage.

frequency and severity had decreased since 2020, Dr. Monteith opined that the Wife remained a grade-four intractable migraine sufferer and would likely have difficulty working due to symptoms and potential absenteeism at work.

On cross-examination, Dr. Monteith acknowledged that a migraine diagnosis is symptom-based and depends on the patient's self-reporting and candor. She further testified that the Wife's examination was normal, with no pathological findings of vestibular neuritis such as nystagmus and gate abnormalities.

The Wife next called Dr. Matthew Simon, a licensed psychologist and board-certified forensic psychologist, who evaluated the Wife using five psychological tests, two neurocognitive tests, and Dr. Monteith's records. He reported the Wife had an IQ of 117, so she was at the high range of functioning. He found the Wife to be markedly depressed and diagnosed her with major depressive disorder. Dr. Simon testified depression can be compatible with employment but opined the prognosis was poor given the comorbidities. He did not believe the Wife had PTSD.

Iris More, a licensed psychotherapist, then testified as a fact witness. She stated that she had treated the Wife in approximately 111 sessions and was currently treating her weekly, beginning after the Wife discovered the Husband's infidelity in 2017. More observed the Wife was depressed and

9

anxious. She initially encouraged the Wife to do basic daily activities and exercise and opined that the Wife's condition would improve with increased socialization and financial self-sufficiency.

The Wife then testified on her own behalf. She explained she missed the previous trial day because she could not get out of bed. She stated that early in the marriage, she performed household tasks and assisted the Husband with his English, his U.S. citizenship application, and job interview preparation. The Wife testified she learned of the Husband's affair in 2014 and of a second affair in 2021 after he moved out in 2017, which she said worsened her anxiety, depression, and post-traumatic stress. She further testified she remained covered under the Husband's employer-provided health insurance from 2014 through trial.

On cross-examination, the Wife disputed that Dr. Simon ruled out PTSD. She believed he stated that it did not meet the clinical threshold. The Wife acknowledged speaking three languages but testified she could not sustain any employment due to limited, intermittent functioning.

After the Wife finished her testimony, she called Lynn Britt, a certified public accountant, who testified about issues related to equitable distribution. The Wife then rested her case.

10

The trial court then asked each side to present an oral closing argument. During the Wife's closing, her attorney stated:

> Judge, as far as attorney's fees and costs. Yes, Judge, it has been an incredible amount of litigation.
> A lot of it the Court is going to hear about it, unfortunately, in an attorney's fee hearing. There has been a couple of 57.105 motions filed. We're seeking fees under Rosen. We've had all kinds of issues with discovery in this case.
> I'm asking the Court to reserve on fees.

In January 2024, the trial court entered its Amended Final Judgment on "Husband's Petition for Dissolution of Marriage and No Minor Children." The trial court did not award the Wife any alimony. The court made the following written findings:

> 7. [The Husband] is a software engineer and [the Wife] is currently unemployed; the last time she applied for a job was in 2013. In the past, [the Wife] worked freelance as a consular research scientist, and she has an anthropology degree. [The Wife] pled that as of 2014 she became disabled and is incapable of employment, as she suffers from mental illness and physical conditions that would impair her ability to perform at work. [The Wife] testified that she has mild thyroid, stipular magnetos, chronic intractable migraines, cataracts, and depression with suicidal thoughts. [The Wife] averred that she was affected very badly after discovering her husband's affair. [The Wife] alleges that she is not able to perform regular day-to-day activities such as driving.
>
> . . .
>
> 14. After the final hearing that took place, the Court relieved [the Husband] from making alimony payments to [The Wife]. The Court finds that [the Wife] is capable of working and supporting herself but chooses not to. The cross-examination of witness [the

11

Wife] revealed that she has the prerequisite skills and qualifications for a highly prestigious job. Expert witness Tamara Thomas conducted an assessment of [the Wife] on December 9, 2021, and provided her with career opportunities and that there were ten employment opportunities that would allow her flexibility. However, [the Wife] did not apply to any. Although [the Wife] alleges that she is impaired by various neurological conditions and is unable to complete daily tasks on her own, her testimony revealed that she was able to prepare food while experiencing moderate migraines and was also able to travel for weeks at a time. Additionally, Dr. Simon testified that [the Wife] showed no signs of post-traumatic stress due to her husband's alleged affair. Dr. Monteith also offered a DHE infusion procedure as a solution to treat her migraines and headaches, yet [the Wife] declined this treatment.

15. Further facts showed that [the Wife] borrowed approximately $60,000.00 from her parents and was able to pay a $5000 [sic] retainer for her own marijuana treatment, messages [sic], acupuncture, and other supplements, yet [the Wife] refused to pay for an DHE infusion treatment. [The Wife] testified that she was able to go to her appointments even when she was experiencing severe migraines.

The Wife moved for rehearing, arguing that the trial court erred in denying alimony, in failing to make the required findings, in failing to reserve jurisdiction over attorney's fees, and in denying a continuance. After a hearing, the trial court granted rehearing only as to the Wife's entitlement to attorney's fees and costs, retained jurisdiction to determine the amount, and otherwise denied relief. The Husband then appealed, and the Wife cross-appealed.

**STANDARD OF REVIEW**

12

On direct appeal, the standard of review of a trial court's decision regarding a rule 12.530 motion for rehearing is abuse of discretion. <u>Barrett v. Barrett</u>, 313 So. 3d 224, 228 (Fla. 5th DCA 2021). On cross appeal, the appellate court reviews an order denying a motion for continuance under an abuse of discretion standard. <u>Vella v. Salaues</u>, 290 So. 3d 946, 948-49 (Fla. 3d DCA 2019). The appellate court reviews the denial of a request for alimony also under an abuse of discretion standard. <u>Saario v. Tiller</u>, 333 So. 3d 315, 320 (Fla. 5th DCA 2022).

**<u>ANALYSIS</u>**

<u>Direct Appeal</u>

The Husband contends that the trial court abused its discretion in granting the Wife's motion for rehearing and supplementing its Final Judgment to reserve jurisdiction to hear the Wife's claim for attorney's fees and costs where the Wife rested her case at trial without presenting evidence to support her fee claim and where the court failed to reserve jurisdiction. The Husband further argues that the trial court abused its discretion in granting the Wife's motion for rehearing after she failed to meet her evidentiary burden despite having knowledge of her claim for attorney's fees and costs and that this prejudiced him.

13

First, in Flores v. Flores, 82 So. 3d 838 (Fla. 4th DCA 2011), the Fourth District Court of Appeal held that "[w]here the trial court fails to address a request for attorney's fees and costs or to reserve jurisdiction to consider the issue, the final judgment should be reversed and remanded for entry of a corrected judgment reserving jurisdiction to address the request for attorney's fees and costs." Id. at 839. In that case, the appellate court reversed after the former wife requested an award of attorney's fees in her amended answer, raised the issue of attorney's fees in a pre-trial statement, and requested in her written closing argument that the trial court reserve jurisdiction on the attorney's fees issue. Id.

Here, the Amended Final Judgment was entered on January 18, 2024. The Wife filed her Motion for Rehearing on February 1, 2024; thus, it was timely under Florida Family Law Rule of Procedure 12.530(b). On December 18, 2020, in her Answer and Verified Counterpetition for Dissolution of Marriage and Other Relief, the Wife requested attorney's fees, like the Wife in Flores did. On August 15, 2023, the first day of non-jury trial before the trial court, in the Wife's counsel's opening statement, she requested that the trial court reserve on fees. Later, during the Wife's counsel's closing argument, the Wife's counsel stated they were asking for attorney's fees

14

under <u>Rosen v. Rosen</u>, 696 So. 2d 697 (Fla. 1997), and requested that the court reserve on fees.

Pursuant to section 61.16, Florida Statutes (2020), "[T]he trial court can award attorney's fees to a party in a dissolution proceeding 'after considering the financial resources of both parties.'" <u>Doyle v. Doyle</u>, 789 So. 2d 499, 502 (Fla. 5th DCA 2001). "The court is permitted to take into account the earning ability of both spouses, the amount of marital assets and liabilities distributed to each spouse, and the liquidity of the assets distributed." <u>Id</u>. at 502-03. Whether to grant an award of attorney's fees is a matter within the trial court's sound discretion; therefore, absent a showing of abuse of that discretion, the decision cannot be reversed. <u>See</u> <u>Bloodwell v. Bloodwell</u>, 508 So. 2d 771, 771 (Fla. 5th DCA 1987).

Here, the trial court granted the Wife's motion for rehearing in part, only as to the issue of attorney's fees and costs. The court further noted the Amended Judgment was supplemented with the disposition of its order. The court found that the Husband had the ability to pay attorney's fees because he had a stable job and was earning over four times what the Wife could earn annually if she sought employment. The court found the Wife had need because under the Amended Final Judgment, she was required to move out

15

of the marital home, her attorney's bills were outstanding, and she was unemployed.

However, the trial court did more than supplement the Amended Final Judgment to reserve jurisdiction over attorney's fees and costs; the court went one step further and found that the Wife was entitled to fees and costs. In her Answer Brief, the Wife contends if this Court follows Florida law, it must affirm the trial court's decision to grant the Wife's motion for rehearing and allow the Wife to present her claim for attorney's fees and costs at a future date. The Wife attributes the omission of a reservation of jurisdiction to the trial court. Thus, the wife admits that a full evidentiary hearing on the issue is needed on remand. Entitlement to an award of attorney's fees under section 61.16, Florida Statutes (2024), turns on need and ability to pay and, absent a stipulation, must be determined at an evidentiary hearing. See Jones v. Jones, 671 So. 2d 852, 854-55 (Fla. 5th DCA 1996); Soterakis v. Soterakis, 913 So. 2d 688, 690 (Fla. 5th DCA 2005). The trial court therefore abused its discretion in awarding the Wife entitlement to fees and costs without first addressing that issue at an evidentiary hearing.

Cross-Appeal

On cross-appeal, the Wife contends the trial court erred in denying her motion to continue the final hearing based on multiple grounds that, taken together, warranted a continuance. We find no merit to her position.

The Wife filed her verified motion for continuance on July 13, 2023, one month before trial. She argued she needed additional discovery due to amendments to section 61.08 and because the Husband had not produced certain materials, including documents sought by deposition *duces tecum* and records from the Husband's counsel. However, the Husband's deposition was completed in December 2022. Further, the Wife does not specify in her motion what documents were missing or why they were relevant to her case.

The Wife relies on Ramadon v. Ramadon, 216 So. 3d 26 (Fla. 2d DCA 2017), in support of her position. In Ramadon, the trial court denied the former wife's motion for continuance filed by her recently hired trial counsel who had replaced her previous counsel who had withdrawn two weeks earlier. Id. at 28. The Second Distrct Court of Appeal reversed the denial of the continuance and stated that the former wife had been harmed by the former's husband's noncompliance with discovery orders and her "request for continuance was unforeseeable by the movant and not the result of

17

dilatory practice." Id. at 30. Here, in contrast, the Wife has not shown prejudice from any allegedly missing discovery.

The Wife also relies on Freire v. Citizens Property Insurance Corporation, 386 So. 3d 995 (Fla. 3d DCA 2023), and argues that she met the criteria for continuance outlined in that case. In Freire, this Court explained that the three criteria that must be met for continuance are "that the outstanding discovery: 1) was sought diligently, 2) was sought in good faith, and 3) is material to the disposition of the case." Id. at 995. Here, the Wife moved for continuance one month before trial and did not demonstrate diligence or explain how the requested discovery was material to the disposition of her claims.

The Wife further argues she required additional discovery due to the 2023 amendment to the adultery provision in section 61.08, Florida Statutes. She asserted in her motion for continuance that the 2023 amendment to the statute "now makes adultery an issue in a manner not implicated under the former statute." She likewise sought leave to amend her counterpetition, contending that the prior version of the statute did not require measuring adultery's economic impact.

Before the 2023 amendment, section 61.08(1) provided: "The court may consider the adultery of either spouse and the circumstances thereof in

18

determining the amount of alimony, if any, to be awarded." § 61.08(1)(b), Fla. Stat. (2022). The current version states that "[t]he court may consider the adultery of either spouse and any resulting economic impact in determining the amount of alimony, if any, to be awarded." § 61.08(1)(a), Fla. Stat. (2025). However, even under the prior version of the statute, evidence of adultery was relevant to show whether the adultery caused a greater need for alimony or whether the spouse committing adultery depleted marital assets during the extra marital affair. See, e.g., Haley v. Haley, 649 So. 2d 332, 332-33 (Fla. 5th DCA 1995) ("The husband's adultery may be considered by the court in deciding on an alimony award, but where, as here, there is no evidence that the husband's adultery caused a material depletion of marital assets and no evidence it has increased the appellant's need for support (beyond the fact of the divorce itself), the court did not err in failing to award alimony based on the husband's marital misconduct."); Santora v. Santoro, 642 So. 2d 86, 87 (Fla. 2d DCA 1994) ("However, the rule in such cases is that unless such marital misconduct causes a depletion of marital assets, thus affecting one spouse's ability to pay alimony or the other spouse's need for alimony, it may not be used as a basis for an award of alimony."). Thus, the trial court did not err in denying the Wife's motion for continuance on this discovery ground.

Next, the Wife argues she needed to amend her counterpetition to conform to the 2023 alimony amendments eliminating permanent alimony. In her July 13, 2023, motion for continuance of trial, as well as her August 9, 2023 motion to supplement her motion for continuance, the Wife argued she needed to amend her counterpetition to allege a claim for durational alimony instead of permanent alimony, due to the 2023 amendment to the alimony statute which did away with permanent alimony. However, the Wife's original counterpetition already sought permanent and durational alimony; thus, no amendment was necessary for the Wife to pursue durational alimony.

The Wife further asserts she sought to amend her counterpetition to request durational alimony for a period over the maximum duration of fifty (50) percent of the length of the marriage, as set out in section 61.08(8)(b), as amended. The Wife claims she was required to plead "exceptional circumstances." Section 61.08(8)(a) and (b), Florida Statutes (2024) state, in part:

> (8)(a) . . . The length of an award of durational alimony may not be modified except under exceptional circumstances and may not exceed the length of the marriage except as set forth in this subsection.
> (b) An award of durational alimony may not exceed 50 percent of the length of a short-term marriage, . . . . Under exceptional circumstances, the court may extend the term of durational alimony by a showing of clear and convincing evidence that it is necessary . . . .

20

Thus, section 61.08 does not require that a spouse plead exceptional circumstances; rather, it requires proof of them. Here, the Wife did not identify what exceptional circumstances existed unknown before or during trial that would have necessitated amending her counterpetition.

The Wife also contended that she needed to amend her counterpetition because the amended alimony statute adopted a new method for calculating an alimony award. She claims this new method is one she did not consider under the prior version of the statute.

According to the amended statute, durational alimony is "the amount determined to be the obligee's reasonable need, or an amount not to exceed 35 percent of the difference between the parties' net incomes, whichever amount is less." § 61.08(8)(c), Fla. Stat. (2024). The Wife has not identified any additional evidence required to prove alimony under the amended statute beyond what was relevant under the prior statute. The trial court, therefore, properly denied her motion for continuance.

The Wife argues that the trial court abused its discretion in denying her request for alimony by rejecting her expert witnesses' testimony that her migraines prevent her from working, substituting its own judgment, and failing to make the findings required under the alimony statute. She first argues she presented unrebutted expert testimony establishing her inability

21

to support herself without the Husband's assistance. Although she concedes the trial court may reject expert witness testimony, she contends it abused its discretion here, relying on Beach Community Bank v. First Brownsville Company, 85 So. 3d 1119 (Fla. 1st DCA 2012). In First Brownsville Company, the expert valued a parcel of real property twice. Id. at 1121. The trial court rejected the appraiser's testimony as not credible because his valuation dropped from $1,480,000.00 in October 2009 to $770,000.00 in August 2010. Id. The trial court found "the diminution in value between his first and second appraisals was simply 'too dramatic.'" Id. On appeal, the First District disagreed with the trial court and stated:

> The decision to accept or reject expert testimony is reviewed under an abuse of discretion standard. However, the court's discretion in rejecting expert testimony cannot be exercised arbitrarily and requires some reasonable basis in the evidence. Moreover, "the trial court may not pit its judgment against that of an expert on highly technical matters."
> . . .
> [The expert's] appraisals detailed several reasons why the property's value declined. None of this evidence was challenged by Appellees or rejected by the court. Finally, there was no reasonable basis in the evidence for the court to opine that a gradual ten percent diminution in the value of the property was more reasonable.

Id. at 1121-22 (internal citations omitted).

First Brownsville Company is distinguishable. In First Brownsville Company, there was no evidence to support the trial court's judgment that it

22

substituted for the expert's judgment, and the opposing party did not challenge the expert's testimony. Here, the Husband challenged the Wife's experts on cross-examination, including evidence that the Wife had previously declined the IV/DHE infusion treatment recommended by Dr. Monteith in early 2022. In addition, in Dr. Simon's evaluation of the Wife, he did not find that she had PTSD due to the Husband's extramarital affair, as the Wife claimed. Moreover, whether the Wife's migraines prevent her from working turns largely on the Wife's self-reported symptoms and is not highly technical. On this record, the trial court's rejection of the Wife's expert testimony was not arbitrary and was supported by competent, substantial evidence. Accordingly, no abuse of discretion was shown. See Richardson v. Richardson, 442 So. 2d 1005, 1005 (Fla. 3d DCA 1983) ("An abuse of discretion appears when the record reveals a lack of competent, substantial evidence to sustain the findings of the trial court.").

Finally, the Wife alleges that the trial court failed to make written findings of fact in the Final Judgment as required under section 61.08(2)(b), Florida Statutes. Section 61.08 states, in part:

> (2)(b) When determining a support, maintenance, or alimony claim, the court shall include written findings of fact relative to the factors provided in subsection (3) supporting an award or denial of support, maintenance, or alimony, unless the denial is based upon a failure to establish a need for or ability to pay support, maintenance, or alimony. **However, the court shall make**

23

**written findings of fact as to the lack of need or lack of ability to pay in denying a request for support, maintenance, or alimony.**

(3) If the court finds that the party seeking support, maintenance, or alimony has a need for it and that the other party has the ability to pay support, maintenance, or alimony, then in determining the proper form or forms of support, maintenance, or alimony under subsections (5)-(8), or a deviation therefrom, the court shall consider all of the following relevant factors, including, but not limited to:

(a) The duration of the marriage.

(b) The standard of living established during the marriage and the anticipated needs and necessities of life for each party after the entry of the final judgment.

(c) The age, physical, mental, and emotional condition of each party, including whether either party is physically or mentally disabled and the resulting impact on either the obligee's ability to provide for his or her own needs or the obligor's ability to pay alimony and whether such conditions are expected to be temporary or permanent.

(d) The resources and income of each party, including the income generated from both nonmarital and marital assets.

(e) The earning capacities, educational levels, vocational skills, and employability of the parties, including the ability of either party to obtain the necessary skills or education to become self-supporting or to contribute to his or her self-support prior to the termination of the support, maintenance, or alimony award.

(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.

(g) The responsibilities each party will have with regard to any minor children whom the parties have in common, with special consideration given to the need to care for a child with a mental or physical disability.

(h) Any other factor necessary for equity and justice between the parties, which shall be specifically identified in the written findings of fact. This may include a finding of a supportive relationship as provided for in s. 61.14(1)(b) or a reasonable retirement as provided for in s. 61.14(1)(c) 1.

24

(Emphasis added). The Wife argues that the trial court was required to make findings on each of the factors listed in subsection (3)(a)-(h). However, because the court denied alimony based on lack of need, it was not required to address each statutory factor. The requirement to consider those listed factors only applies after a trial court first determines that one party has a need for alimony and the other has the ability to pay. Ballard v. Ballard, 158 So. 3d 641, 644 (2014) ("[T]he trial court [was not] required to make findings of fact supporting its denial [of alimony], beyond its finding that neither party had an actual need for alimony or maintenance. . . . The court would have been required to make findings based upon the factors in section 61.08(2) only if the court had concluded that one of the parties was entitled to alimony.").

Here, the trial court made the following written findings in paragraph 14 of the Amended Final Judgment:

14. After the final hearing that took place, the Court relieved Husband/Petitioner from making alimony payments to Wife/Respondent. The Court finds that the Respondent is capable of working and supporting herself but chooses not to. The cross-examination of witness Respondent revealed that she has the prerequisite skills and qualifications for a highly prestigious job. Expert witness Tamara Thomas conducted an assessment of Respondent on December 9, 2021, and provided her with career opportunities and that there were ten employment opportunities that would allow her flexibility. However, Respondent did not apply to any. Although Respondent alleges that she is impaired by various neurological conditions and is

25

unable to complete daily tasks on her own, her testimony revealed that she was able to prepare food while experiencing moderate migraines and was also able to travel for weeks at a time. Additionally, Dr. Simon testified that Respondent showed no signs of post-traumatic stress due to her husband's alleged affair. Dr. Monteith also offered a DHE infusion procedure as a solution to treat her migraines and headaches, yet Respondent declined this treatment.

Accordingly, the trial court made written findings substantiating why it denied alimony to the Wife. Mango v. Mango, 370 So. 3d 370, 373 (Fla. 5th DCA 2023) (Soud, J. concurring) ("[The listed factors in section 61.08] are to be considered when the trial court in a dissolution action—having already determined one spouse has need for alimony and the other spouse has the ability to pay alimony—decides the type and amount of alimony to be awarded. See § 61.08, Fla. Stat.[.]").

## CONCLUSION

On the Husband's direct appeal, we reverse the Amended Final Judgment and the order on the Wife's motion for rehearing, to the extent the trial court awarded the Wife entitlement to attorney's fees and costs. We remand the case for an evidentiary hearing on the Wife's entitlement to fees, and if entitlement is found, a determination of the reasonable amount of attorney's fees and costs. On the Wife's cross-appeal, we affirm the Amended Final Judgment and the Order on the Wife's motion for rehearing, as to all issues raised.

26

Affirmed in part, reversed in part, and remanded.